**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **BLAKE ADAMS** | **CIVIL ACTION** |
| **VERSUS** | **NO.   15-6207** |
| **KEITH COOLEY, WARDEN** | **SECTION:    "R"(5)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

*Procedural History*

Petitioner, Blake Adams, is a convicted inmate incarcerated at the Allen Correctional Center in Kinder, Louisiana.    On September 14, 2010, Adams was convicted by a jury of two felony offenses (Docket No. 1605 – felony grade simple criminal damage to property and unauthorized entry of an inhabited dwelling).    He was tried in tandem and found guilty by the trial judge of three misdemeanor offenses (Docket No. 1606 - domestic abuse battery,

simple assault and violation of a protective order).[1]    On September 20, 2010, he was sentenced to six months imprisonment on the misdemeanors, two years imprisonment for simple criminal damage to property and six years imprisonment for unauthorized entry.[2] He was subsequently charged as an habitual offender.    Following an habitual-offender adjudication, the trial court vacated the six-year sentence and sentenced him as a fourth felony offender to 30 years imprisonment without benefit of probation or suspension of sentence.[3]    His motion to reconsider the enhanced sentence was denied.[4]

Adams filed a direct appeal with respect to his felony convictions and sentences in Docket No. 1605, asserting that the evidence was insufficient and the trial court erred in allowing "other crimes" evidence.    The Louisiana Fifth Circuit Court of Appeal affirmed the felony convictions and sentences on April 24, 2012.[5]    His timely request for a rehearing

---

[1]  State Rec., Vol. 2 of 7, Minute Entry, 9/14/10; State Rec., Vol. 6 of 7, Trial Transcript, pp. 260-262.

[2]  State Rec., Vol. 3 of 7, Minute Entry, 9/20/10.    At Adams's request, defense counsel, Francis Moore, Jr., withdrew and newly retained counsel, James Williams, enrolled for the sentencing proceedings.    Williams's motion to continue the sentencing was denied. State Rec., Vol. 2 of 7.

[3]  State Rec., Vol. 3 of 7, Minute Entry, 3/1/11.    Additionally the trial court imposed a permanent Uniform Abuse Prevention Order restraining him from any future contact with the victim.

[4]  State Rec., Vol. 3 of 7, Motion to Reconsider; Order, 3/28/11.

[5]  *State v. Adams*, 2011-KA-980, (La. App. 5th Cir. 4/24/12), 89 So.3d 435 (reh'g denied 6/5/12); State Rec., Vol. 3 of 7.

was denied on June 5, 2012.    On April 19, 2013, the Louisiana Supreme Court denied his related writ of certiorari.[6]

On January 9, 2014, he filed an application for post-conviction relief with the state district court.[7]    In that application, he asserted that the trial court committed reversible error in allowing into evidence an unauthenticated and uncertified damage repair estimate and cell phone records; ineffective assistance of trial counsel in failing to object to inadmissible evidence, failing to present a viable defense, offering misleading advice during plea negotiations, refusing to file a motion for continuance and a motion to withdraw and enroll new counsel, and in failing to file a motion to suppress; and finally, prosecutorial misconduct in allowing the victim to offer false testimony.    On March 17, 2014, the state district court denied relief as untimely for any claims challenging the misdemeanor convictions pursuant to Louisiana Code of Criminal Procedure article 930.8.[8]    On May 28,

---

[6]    *State v. Adams*, 2012-KH-1629 (La. 4/19/13), 111 So.3d 1027, State Rec., Vol. 3 of 7.

[7]    State Rec., Vol. 4 of 7, Uniform Application for Post-Conviction Relief certified January 9, 2014.    Federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir.2006).    If that date cannot be determined from the state court record with respect to the *pro se* filings in this case, the Court will use either a signature date (as the applications could not have been placed in the mail any earlier than the signature date), or if unavailable, the file-stamp placed on the document by the Clerk of Court.

[8]    State Rec., Vol. 4 of 7, Order denying PCR, 3/17/14.

2014, the state district court denied relief on the trial-court error and prosecutorial-misconduct claims as procedurally barred pursuant to Louisiana Code of Criminal Procedure article 930.4, and the remaining ineffective-assistance-of-counsel claims as without merit.[9] On June 25, 2014, Adams filed a related writ application with the Louisiana Fifth Circuit raising only claims challenging the felony convictions.[10]   The Louisiana Fifth Circuit Court of Appeal denied relief on July 22, 2014.[11]   His request for a rehearing was refused on August 25, 2014.   On August 21, 2014, he signed and submitted a related supervisory writ application with the Louisiana Supreme Court.   He filed several supplements to the application, including one attaching alleged new evidence that included his disciplinary complaint against defense counsel and defense counsel's response.   His writ application to the Louisiana Supreme Court was denied without stated reasons on August 28, 2015.[12]

On October 18, 2015, Adams filed his federal application for *habeas corpus* relief.[13]

---

[9]   State Rec., Vol. 4 of 7, Order denying PCR, 5/28/14.

[10]   State Rec., Vol. 7 of 7, Louisiana Fifth Circuit Application for Supervisory Writ of Review.   Although the application itself is not dated, the ruling denying relief reflects a filing date of June 25, 2014.   As the Fifth Circuit's writ ruling states, relator sought review of the trial court's ruling dated May 28, 2014 (*i.e.*, felony convictions).

[11]   State Rec., Vol. 4 of 7, *State v. Adams*, 14-KH-471 (La. App. 5th Cir. 7/22/14) (unpublished writ ruling).

[12]   State Rec., Vol. 7 of 7, Louisiana Supreme Court Supervisory Writ Application No. 2014-KH-1823 (and supplements); *see also State ex rel. Adams v. State*, 2014-KH-1823 (La. 8/28/15), 175 So.3d 400.

[13]   Rec. Doc. 6, 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing

In his petition, Adams raises the following grounds for relief: (1) prosecutorial misconduct in failing to correct the victim's false testimony and (2) ineffective assistance of trial counsel for failing to object to inadmissible evidence or present a viable defense and for offering misleading advice during plea negotiations. [14]    The State contends the application is untimely as to any claims challenging the misdemeanor convictions, subject to procedural default with respect to the claim of prosecutorial misconduct, and otherwise without merit as to the ineffective assistance of counsel claims for relief.[15]    Adams filed a reply to the State's response.[16]    The State filed an additional response and Adams submitted another reply memorandum.[17]

<em>Statute of Limitations</em>

Initially, the Court must determine whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default."    *Nobles v. Johnson*, 127 F.3d 409, 419–20 (5th Cir. 1997) (citing 28

---

to the district court."    *Roberts v. Cockrell*, 319 F.3d 690, 691 n.2 (5th Cir. 2003).    Adams certified that he placed the petition in the prison mailing system on October 18, 2015.

[14]  Rec. Doc. 6-1, p. 12.

[15]  Rec. Doc. 12.

[16]  Rec. Doc. 13.

[17]  Rec. Docs. 14, 15.

U.S.C. § 2254(b),(c)). [18]    Although the State concedes that the federal application challenging the felony convictions is timely, the Court must address the time-bar challenge with respect to the misdemeanor convictions.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq*., governs the filing date for this action because the petitioner filed his *habeas* petition after the AEDPA's effective date.    *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).    The AEDPA generally requires that a petitioner bring his Section 2254 claims within one year of the date on which his underlying criminal judgment becomes "final."[19]    With regard to finality, the United States Fifth Circuit Court of Appeals

---

[18]  The Court does not address exhaustion due to the overriding timeliness concerns, though it appears that any claims with respect to the misdemeanor convictions may not have been fully exhausted.

[19]  Title 28 U.S.C. § 2244(d) provides additional grounds, which do not apply here:

(1)    A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

    A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    D.    the date on which the factual predicate of the claim or claims

has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir. 2003). However, "[i]f the defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires." *Id.* at 694; *see also Foreman v. Dretke*, 383 F.3d 336, 338 (5th Cir. 2004) (Section 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).
>
> Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review. *See Foreman*, 383 F.3d at 338–39. As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal. *See Causey v. Cain*, 450 F.3d 601, 606 (5th Cir.2006); *Roberts*, 319 F.3d at 693.

*Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008).

The instant case involves separate state-court convictions with two different finality dates arising from Case Nos. 10-1605 and 10-1606.    The State correctly maintains that the misdemeanor convictions and sentences became final, for federal limitations purposes, when Adams failed to pursue a writ of review from those convictions in the court of appeal,

---

presented could have been discovered through the exercise of due diligence.

and his time for doing so expired on October 14, 2010.[20]    Thus, under the plain language of § 2244, Adams had until October 14, 2011, to file a timely federal application for *habeas corpus* relief from his convictions for domestic-abuse battery, simple assault and violation of a protective order in case number 10-1606.    He did not file his federal application until October 18, 2015.    His federal application is therefore untimely with respect to the misdemeanor convictions, unless the one-year deadline was extended through tolling.

The Court finds no basis for statutory tolling in this case.    The AEDPA expressly provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."    28 U.S.C. §2244(d)(2).    Adams concedes he had no such applications pending before the state courts during the applicable one-year period.    Therefore, the one-year federal limitations period continued to run uninterrupted and expired on October 14, 2011.    His state-court application for post-conviction relief was not filed until January 9, 2014, well after the one-year federal limitations period had already expired, and therefore could not possibly afford him any tolling benefit.    *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000); *Magee v. Cain*, Civ. Action No. 99–3867, 2000 WL 1023423, at *4, *aff'd*, 253 F.3d 702 (5th Cir. 2001); *Williams v. Cain*, Civ. Action No. 00–536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000).

---

[20]    Under Louisiana law, a criminal defendant has thirty (30) days to file an application for supervisory writ of review.    Uniform Rules Courts of Appeal, Rule 4-3; *State v. Hunter*, 15-69 (La. App. 5th Cir. 2/11/15), 168 So.3d 773.

Once the federal limitations period expired, "[t]here was nothing to toll."    *Butler v. Cain*, 533 F.3d at 318.    Because Adams had no other state applications pending at any time during the one-year limitations period, he clearly is not entitled to any tolling credit pursuant to § 2244(d)(2).

Nor does Adams offer any equitable excuse for an untimely challenge to the misdemeanor convictions to the extent his claims implicate those convictions.    "A petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."    *Holland v. Florida*, 560 U.S. 631, 649, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010) (internal quotation marks omitted); *see also Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances").    A petitioner bears the burden of proof to establish entitlement to equitable tolling.    *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002).

The record before the Court does not demonstrate any basis for equitable tolling. Although Adams recognizes that he was not entitled to directly appeal the misdemeanor convictions,[21]  he fails to explain why he did not pursue the appropriate means for legal

---

[21]  *See* Rec. Doc. 13, p. 3.    Under Louisiana law, appellate jurisdiction extends only to cases that are triable by a jury.    *State v. Chess*, 00–164 (La. App. 5th Cir. 6/27/00); 762 So.2d 1286, 1287 (citing La. Const. of 1974, art. 5 § 10; La. C.Cr.P. art. 912.1).    The proper procedure for seeking review of a misdemeanor conviction is an application for writ of review directed to the appellate court to exercise its supervisory jurisdiction.    *See* La. Code Crim. P. art. 912.1(C)(1).

review of any claims challenging those convictions.    It is well-settled that mistake, ignorance of the law, and a prisoner's *pro se* status do not suffice to justify equitable tolling. *Johnson v. Quarterman*, 483 F.3d 278, 286 (5th Cir. 2007); *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002); *Fierro v. Cockrell*, 294 F.3d 674, 682 (5th Cir. 2002); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000); *see also Tate v. Parker*, 439 F. App'x 375 (5th Cir. 2011); *Mathis v. Thaler*, 616 F.3d 461, 474 (5th Cir. 2010) ([E]quitable tolling "is not intended for those who sleep on their rights").    Accordingly, Adams is not entitled to equitable tolling.[22] Because Adams has not established any basis for statutory or equitable tolling in the instant case, his federal application with respect to Case No. 10-1606 is untimely.

### Procedurally Defaulted Claim (Prosecutorial Misconduct)

Adams claims that the State engaged in prosecutorial misconduct in violation of his right to due process.    He points to an instance where the prosecutor failed to correct the victim's testimony elicited by defense counsel on cross-examination that she could not recall

---

[22]    In *McQuiggin v. Perkins*, the United States Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass... [to excuse] the expiration of the statute of limitations."    *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013).    The Supreme Court has cautioned, however, that "tenable actual-innocence gateway pleas are rare[.]"    *Id.*    To succeed on this claim, a petitioner must present a credible claim of actual innocence based on "new reliable evidence... that was not presented at trial," and he "must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt" in light of that new evidence of his factual innocence.    *Schlup v.Delo*, 513 U.S. 298, 324, 327 (1995).    Adams does not invoke *McQuiggin* and, in any event, has not made a colorable showing that he is actually innocent in light of "new evidence."

a particular event.[23]    He first raised this claim in his application for post-conviction relief in the state district court, which rejected the claim as procedurally barred from review under Louisiana Code of Criminal Procedure article 930.4.    The intermediate court of appeal specifically upheld the ruling, stating "[w]e agree with the trial court that these claims are procedurally barred from review, as they were not raised at trial or on appeal, and relator has not shown that his failure to raise these claims was excusable.    See La. C.Cr.P. art. 930.4(B) and (C)."[24]    The Louisiana Supreme Court denied relief without additional reasons.    *See Ylst v. Nunnemaker*, 501 U.S. 797, 802, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (when the last state-court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state-court opinion).    The State maintains that this claim is procedurally barred from review by this Court.

For a state-imposed procedural bar to prevent review by this federal *habeas* court, the bar must be both independent and adequate.    Article 930.4 (B) and (C) each qualify as

---

[23]  Rec. Doc. 6-1 at 24 (citing State Rec., Vol. 5 of 7, Trial Transcript, pp. 105-08).

[24]  Louisiana Code of Criminal Procedure article 930.4 provides in relevant part:

B. If the application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court shall deny relief.

C. If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court shall deny relief.

both an independent and adequate procedural rule to support a procedural bar in federal court. *See Parks v. Cain*, 12–0297, 2014 WL 505329, at *8 (E.D. La. 2/16/14) (Feldman, J.); *Lewis v. Cain*, 2010 WL 4363546, at *9 (E.D. La. 8/19/10) (Chasez, MJ.), *report & recommendation adopted*, 2010 WL 4340795 (E.D. La. 10/21/10) (Feldman, J.); *Hurd v. Cain*, 2009 WL 3063354, at *7 (E.D. La. 9/23/09) (Lemmon, J.); *Simmons v. Cain*, No. 06–2130, 2008 WL 2185422, at *6 (E.D. La. May 20, 2008) (Berrigan, J.) (finding Article 930.4(B) and (C) independent and adequate to bar trial errors raised on post-conviction that were not raised at trial or on appeal); *Monroe v. Cain*, No. 05–0929, 2006 WL 5507856, at *8 (E.D. La. Oct.17, 2006) (finding Article 930.4(B) and (C) independent and adequate to bar prosecutorial misconduct claims and others not raised at trial or on appeal), *adopted as modified on other grounds by Monroe v. Cain*, No. 05–0929, 2008 WL 818968, at *1 (E.D. La. Mar.24, 2008) (Berrigan, J.). Here, the state courts' ruling was based on Louisiana law setting forth the requirements for preservation and presentation of claims on post-conviction review. The ruling was therefore independent of federal law and relied strictly on state procedural requirements.

A federal *habeas* petitioner may be afforded federal review of a procedurally defaulted claim only if he demonstrates "cause" for his default and "prejudice attributed thereto," or that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997) (citing *Coleman*, 501 U.S. at 731–32); *Amos v. Scott*, 61 F.3d 333, 338–39 (citing *Harris v. Reed*,

489 U.S. 255, 262 (1989) and *Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)).    Here, Adams has demonstrated neither.

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.    *Murray v. Carrier*, 477 U.S. 478, 488 (1986).    Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel.    *Romero v. Collins*, 961 F.2d 1181, 1183 (5th Cir. 1992).    Adams argues that the ineffective assistance of trial and/or appellate counsel establishes cause for his failure to pursue the defaulted claim.[25] Ineffective assistance of counsel may in some circumstances serve as cause to overcome a procedural bar.    *See Murray*, 477 U.S. at 489 (where ineffective-assistance claim has independently been presented to state courts, it may be used to establish cause for a procedural default).    However, the ineffective-assistance-of-counsel claim cannot do so if it is, itself, procedurally defaulted. In such circumstances, the petitioner must first show "cause and prejudice" for the defaulted claim.    *Edwards v. Carpenter*, 529 U.S. 446, 452–53 (2000).

Review of Adams's claims asserted in his direct appeal and post-conviction proceedings in state court shows he never complained that either trial or appellate counsel

---

[25]  Rec. Doc. 13, pp. 6-8.

was ineffective for failing to raise a claim of prosecutorial misconduct. Thus, Adams has failed to exhaust his state-court remedies as required under *Rose v. Lundy*, 455 U.S. 509 (1982), and any attempt to do so in state court at this point would be procedurally barred as untimely under Louisiana Code of Criminal Procedure article 930.8.[26] *See Mays v. Cain*, No. 08–3983, 2011 WL 2295173, at \*4 (E.D. La. June 9, 2011) (Lemelle, J.) (quoting *Coleman*, 501 U.S. at 735 n. 1) (additional citation omitted) ("[A] procedural default occurs when a prisoner fails to exhaust available state remedies, and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.' "). "The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n. 43). Because Adams has failed to show an objective cause for his default, the Court need not address prejudice.

Adams may avoid the procedural bar only if application of the procedural bar would result in a fundamental miscarriage of justice. A petitioner makes such a showing only if he establishes as a factual matter that he is "actually innocent" of the crime of conviction. *Williams v. Thaler*, 602 F.3d 291, 307 (5th Cir. 2010) (citing *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995)); *McGowen v. Thaler*, 675 F.3d 482, 499 (5th Cir.), *cert. denied*, 133 S.Ct. 647, 648

---

[26] Article 930.8 provides for two years from the date a conviction and sentence becomes final to timely seek post-conviction relief.

(2012) (citing *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) and *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999)).    When the petitioner has not adequately asserted his actual innocence, the procedural default cannot be excused under the "fundamental miscarriage of justice" exception.    *Glover*, 128 F.3d at 903.    Adams has not made any showing that he is actually innocent of the underlying conviction such that a miscarriage of justice would result from this Court's failure to consider his defaulted claim.    Accordingly, the claim is procedurally barred in this federal court.

*Standards of Review on the Merits*

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").    With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of

such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002).    A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent.    *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010).    An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case."    *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694.    A state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief.    *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not

simultaneously unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Harrington*, 562 U.S. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to second-guess the reasonable decisions of state courts.").

*Facts*

The following facts were summarized on direct appeal by the Louisiana Fifth Circuit Court of Appeal:

> The victim, Nateryl Butler, and defendant were involved in a romantic relationship. Ms. Butler explained that she and defendant began dating in 2004, and lived together in all of 2005 and half of 2006. As a result of this relationship, they had a son who was born on October 4, 2005. In the beginning, their relationship was good; however, the two began having problems, and in May of 2006, Ms. Butler terminated the relationship and moved out of the apartment they were sharing.
>
> On July 13, 2008, defendant called Ms. Butler and asked permission to visit with their son. Ms. Butler agreed; however, when defendant arrived, he wanted to leave with their child. Ms. Butler would not allow it, and an argument ensued. Ms. Butler then walked outside and was followed by defendant and their son. When defendant was distracted by an incoming call on his cell phone, Ms. Butler returned to her apartment with her son and locked the door. Shortly thereafter, defendant returned to the apartment and knocked on the door. Ms. Butler refused to let him in, and defendant began kicking the door until it breached. Once inside the apartment, defendant punched Ms. Butler in the face and attempted to take his son, who refused to

leave with him. Ms. Butler dialed 911, but defendant was gone when the police arrived.

Deputy Benjamin Ingles of the Jefferson Parish Sheriff's Office responded to the domestic disturbance call. Upon arrival, Deputy Ingles observed that the door frame to the apartment was "busted" and that there were "splinters of wood all over the floor." He also observed that Ms. Butler was hysterical, crying, and had slight swelling on the left side of her face.[27]

Another incident occurred on September 24, 2008. On that day, defendant came over to Ms. Butler's apartment unannounced and vandalized her car when she would not allow him inside of her home. From her kitchen window, Ms. Butler observed defendant break the passenger side mirror and dent the passenger side doors to her vehicle. She immediately dialed 911. Deputy Richard Wilson responded to the scene and took a statement from Ms. Butler, who was "upset and afraid."

Detective Randall Fernandez of the Jefferson Parish Sheriff's Office conducted a follow-up investigation of these two incidents and defendant's violation of a protective order issued on behalf of Ms. Butler on October 31, 2009. After completing his investigation, Detective Fernandez obtained an arrest warrant for defendant, who was subsequently arrested and charged with the instant offenses.

At trial, defendant claimed that he was not at Ms. Butler's apartment on July 13, 2008, or September 24, 2008. He denied kicking her door open or damaging her vehicle.[28]

*Analysis*

A. *Ineffective Assistance of Trial Counsel*

Adams asserts several claims involving ineffective assistance of counsel, which he

---

[27]    On cross-examination, Deputy Ingles admitted that his report reflected that the victim had no visible injuries and refused medical attention.

[28]    State Rec., Vol. 3 of 7, *State v. Adams*, 2011-KA-980 (La. App. 5th Cir. 4/24/12), 89 So.3d 435, 438-39 (footnote in original).

raised in the state courts on post-conviction relief. He contends trial counsel was ineffective for failing to object to the admissibility of a property-damage estimate and cell phone records introduced at trial, to present a viable defense, and to provide him competent advice during plea negotiations.

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e*, deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must

take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689.    "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"    *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).    A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.    *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."    *Strickland*, 466 U.S. at 694.    In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*.

Because the state courts rejected petitioner's ineffective-assistance-of-counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state-court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."    28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir.2002). The standard of judicial review applicable to ineffective assistance of counsel claims under §2254(d) is "doubly deferential."    *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009); *Harrington v. Richter*, 562 U.S. 86, 105, 131 S.Ct. 770, 788, 178

L.Ed.2d 624 (2011) (reaffirming that "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so."). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."    *Id*.

    1.  *Failure to raise evidentiary objections*

Adams first claims that defense counsel should have objected when the State sought to introduce unauthenticated and uncertified evidence of a body shop repair estimate for the victim's vehicle and the victim's cell-phone statement, neither of which were accompanied by the testimony of the records custodian.    He claims his confrontation rights were violated when defense counsel failed to object based on hearsay.    He argues that absent the estimate the State would have been unable to prove that the amount of damage to the vehicle was over $500.00, an element of proof for felony grade simple criminal damage to property. He argues that absent the phone records the jury could not have credited the victim's testimony about him making harassing calls to the victim in violation of a protective order.

In rejecting this claim on collateral review, the state district court observed that the phone records were not used as evidence of the charged offenses and that the records were properly authenticated by the victim's testimony as authorized under state evidentiary law. The court noted that the victim likewise testified regarding the amount of damage to her vehicle.    The court concluded that the evidentiary admission in both instances constituted

harmless error regardless given the victim's cumulative testimony.    The appellate court likewise found no error in the district court's ruling and denied relief.    The Louisiana Supreme Court denied relief without stated reasons.

At trial, the State introduced the damage estimate into evidence with no objection from the defense during the direct examination of Detective Randall Fernandez.    Detective Fernandez detailed his investigation into the victim's complaint that Adams caused damage to her vehicle.[29]    He testified that during the course of the investigation he asked her to provide him with paperwork from the body shop, which she did, reflecting the total amount of damage to the vehicle in the amount of $625.00.    He also incorporated the information as part of the police report.    During the victim's direct examination testimony, the prosecutor questioned her about the damage to her vehicle.    She testified that she watched Adams kick her passenger side mirror off and dent the passenger side doors of her vehicle— damage reflected in photographs introduced into evidence.    She testified that the cost to repair her vehicle was $625.00.    She further testified that she maintained insurance on the vehicle and paid a $500.00 deductible out of pocket toward the repairs.[30]

The victim herself offered relevant, admissible testimony about the amount of damage to her vehicle and the actual cost of repair.    The estimate introduced was also an authorization by the victim for repairs in that amount.    The amount of damage was

---

[29]    State Rec., Vol. 5 of 7, Trial Transcript, pp. 56-58.

[30]    State Rec., Vol. 5 of 7, pp. 90-91.

therefore established by the victim's testimony.    Defense counsel had the opportunity to cross-examine the victim and dispute her testimony.    Despite his client's belief that the victim fraudulently created the estimate herself, defense counsel obviously decided not to dispute the amount she was quoted and paid, which was a matter of trial strategy and entirely reasonable under the circumstances.    Federal *habeas* courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.    *Strickland*, 466 U.S. at 689.

Furthermore, even assuming for the sake of argument that counsel performed deficiently in failing to object to the estimate as hearsay, Adams has not established that prejudice resulted, *i.e.*, even if defense counsel had objected to the damage estimate and the trial court had sustained the objection, the result of the trial would not have been different, as required under *Strickland's* prejudice prong.    *Strickland*, 466 U.S. at 694.    As the state district court noted, the evidence was merely cumulative of the victim's testimony.    Thus, contrary to his assertion, the exclusion of the estimate would not have affected the outcome of the trial because "[t]here can be no prejudice when damaging evidence that should not have been admitted is merely cumulative of evidence that was properly admitted."    *Morin v. Thaler*, 374 F. App'x 545, 555 (5th Cir. 2010) (citation omitted).    In fact, as noted on direct appeal, there was ample other evidence, including the victim's testimony, adduced at trial in support of his conviction for simple criminal damage to property:

> We likewise find that the State presented sufficient evidence to prove defendant intentionally damaged Ms. Butler's vehicle. At trial, Ms. Butler

testified that defendant came to her apartment on September 24, 2008, knocked on her door, and vandalized her vehicle when she refused to let him inside. Through her kitchen window, Ms. Butler observed defendant kick her passenger side mirror off and dent the passenger side doors of her vehicle. At trial, Ms. Butler testified that the cost of repairs for the damage to her vehicle was six hundred twenty-five dollars. She further testified that she did not give defendant permission to kick her vehicle. In addition, the 911 call, the photographs of the damage to her vehicle, and the repair estimate for her car were introduced at trial.[31]

Under the circumstances, counsel's performance with respect to the damage estimate was not constitutionally ineffective.

Adams also argues that trial counsel was ineffective for failing to object to the State's use of unauthenticated cell-phone records that constituted hearsay to corroborate the testimony of the victim that Adams phoned and harassed her in violation of a protective order.    This claim also does not merit federal *habeas* relief.

The phone records were associated with "other crimes" evidence relied upon by the State at trial.    The State filed a pretrial motion seeking to introduce evidence of other crimes (*i.e.*, five separate incidents), one of which included reference to harassing phone calls and threats made by Adams to the victim in violation of a protective order.    The victim made a complaint to police on December 7, 2009.    *See State v. Adams*, 89 So.3d at 442.    At trial, the State prosecutor questioned the victim briefly about the incident.    She testified that she reported this particular threat in violation of the protective order on December 7, 2009, after Adams phoned and asked her to drop the child support demand because he was

---

[31]    *State v. Adams*, 89 So.3d at 439-40.

being arrested constantly.    When she refused, he threatened to kill her and take their son. On cross-examination, defense counsel explored the victim's cell-phone records and questioned her specifically about phone calls she made to Adams as well, which she conceded were in violation of the same protective order (that provided neither one should contact the other).[32]    On redirect, the prosecutor questioned the victim about the phone records over defense counsel's objection and then introduced the statement into evidence without objection.[33]

The state court held that the State properly laid a foundation and authenticated the cell phone records through the testimony of the victim who received the calls on her cell phone, pursuant to Louisiana Code of Evidence article 901(B)(6)(a).    To the extent that Adams challenges the state court's interpretation of Louisiana evidentiary law, that claim is not cognizable on federal *habeas* review.    *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (A federal *habeas* court generally does not reexamine state-court determinations on state law questions).    Adams has identified no legal authority showing that the cell phone records likely would have been excluded had counsel made a hearsay objection.    *See, e.g., State v. Austin*, 12-629 (La. App. 5th Cir. 3/13/13), 113 So.3d 306, 316-17.    Moreover, those records provided considerable benefit to the defense, and the defense itself relied on them to diminish the victim's credibility by establishing numerous phone calls she made to Adams

---

[32]    State Rec., Vol. 5 of 7, pp 97-109.

[33]    State Rec., Vol. 5 of 7, pp. 122-126.

in clear violation of the protective order.    Indeed, the records were more beneficial to the defense than the State, as evidenced by the State's numerous objections to defense counsel's line of questioning on cross-examination of the victim.[34]    Defense counsel's strategic decisions in this regard have not been shown to be unreasonable.

Moreover, Adams has also failed to prove that any prejudice resulted from the admission of the phone records.    The records were related to only a fraction of the "other crimes" evidence introduced, which the trial court had ruled pretrial was admissible. Furthermore, that evidence was properly introduced at trial regardless through the victim's and officer's testimony about the incident.    Accordingly, Adams cannot establish "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."    *Strickland*, 466 U.S. at 694.    This claim does not merit relief.

### 2. *Failing to present a viable defense*

Adams next complains that defense counsel was constitutionally ineffective for failing to present a viable defense that included witness testimony to refute both the cell-phone records allegedly showing a violation of the protective order and the amount of the damage-repair estimate.    He claims that he had nine witnesses who could have provided alibi testimony, but defense counsel instead relied on two witnesses with no knowledge of his whereabouts.    The state district court rejected this claim as "speculative and conclusory"

---

[34]    State Rec., Vol. 5 of 7, pp. 97-105.

and meritless.    The appellate courts similarly denied relief.    This Court agrees that Adams's claim fails, because his assertions regarding the witnesses' testimony are purely speculative, and he cannot show that the testimony is even beneficial to the defense.    The state court's decision rejecting the ineffectiveness claim on these grounds was reasonable under *Strickland, supra*.

As the United States Fifth Circuit Court of Appeals has explained regarding claims of uncalled witnesses:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense. This requirement applies to both uncalled lay and expert witnesses.

*Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir.2010) (citations, quotation marks, and brackets omitted); *see also Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir.2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

Here, Adams has produced no evidence whatsoever, such as names of witnesses and affidavits, demonstrating that they would have testified in a manner beneficial to the defense.

He has failed to provide anything to support his speculation as to their purported testimony. Therefore, he clearly has not met his burden with respect to this claim. *See, e.g., United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir.1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); *Buniff v. Cain*, Civ. Action No. 07–1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); *Anthony v. Cain*, Civ. Action No. 07–3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); *Combs v. United States*, Nos. 3:08–CV–0032 and 3:03–CR–01 88, 2009 WL 2151844, at * 10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); *Harris v. Director, TDCJ–CID*, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

Furthermore, Adams has failed to establish that these witnesses' testimony would have helped his defense.    He claims that a phone company representative could have established that no calls came from his number in order to disprove that he violated the protective order ("other crimes" evidence).    Whether or not a received call originated from Adams's phone, or a number associated with him, such as a family member or friend's phone,

does not require testimony from a company representative, who has no knowledge of the listed phone numbers beyond what is represented on the statement itself.     Moreover, the victim testified that Adams also called from a blocked number, as reflected on the statement, and a phone company representative would have no way of refuting such a claim.     Adams plainly cannot show that testimony by an ATT representative would have helped the defense. He also argues that counsel should have called a defense expert to testify that the damage to the vehicle was actually less than $500.00.     He offers no proof whatsoever that any expert witness would have been willing or able to offer such an estimate based on photographs to refute the amount the victim was quoted at the time and actually paid for repairs, or that the jury would have accepted such an estimate over the victim's testimony offered at trial. Thus, he has failed to establish there is a reasonable probability that, but for counsel's failure to call these witnesses, the outcome would have been different.     Accordingly, this claim lacks merit.

   *3.  Misleading advice during plea negotiations*

       Finally, Adams claims that defense counsel offered misleading advice during plea negotiations that caused him to reject a favorable plea offer.     He alleges that the State offered him a four-year sentence if he pleaded guilty to unauthorized entry of an inhabited dwelling, but he rejected the offer because his attorney incorrectly informed him that the maximum sentence he could receive as a multiple offender was six years imprisonment. Adams was ultimately found guilty as a fourth-felony offender and sentenced to 30 years

imprisonment.   Adams alleges that had counsel informed him of the actual sentencing range he faced, there is a reasonable probability that he would have accepted the terms of the guilty plea rather than proceeding to trial.

A defendant in a criminal proceeding has a right under the Sixth Amendment to effective assistance from his attorney at all critical stages in the proceedings, which includes the plea bargaining process.   *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012); *see also Missouri v. Frye*, 132 S.Ct. 1399 (2012).   To prevail on an ineffective assistance claim, a petitioner must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense.   *Strickland*, 466 U.S. at 697.   If a court finds that a petitioner has made an insufficient showing as to *either* the deficiency or prejudice prong, it may dispose of the ineffective assistance claim without addressing the other prong.   *Id.*

Under *Strickland*, a petitioner first must show that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.   *See Styron v. Johnson*, 262 F.3d at 450.   An attorney is held to an objective standard of reasonableness in rendering reasonably competent advice to a criminal defendant during the guilty plea process.   *Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (citing *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).   To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the

outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. at 189. In cases where trial counsel's defective advice caused the defendant to reject a plea offer and proceed to trial, prejudice is demonstrated where "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that is fact were imposed." *Lafler v. Cooper*, 132 S.Ct. at 1385.

The state district court rejected this claim on post-conviction review, finding that the record before the court was devoid of any evidence to support Adams's assertion that a plea offer was ever made. The intermediate appellate court then denied relief, finding no error in the district court's ruling. On supervisory review to the Louisiana Supreme Court, he submitted additional new evidence – his disciplinary complaint against defense counsel and counsel's response – obtained during the pendency of his Louisiana Supreme Court proceedings.[35] His complaint is undated, but the response is dated November 26, 2014. Counsel's response states that "despite the advice of counsel, Mr. Adams refused a plea

---

[35] State Rec., Vol. 7 of 7, Louisiana Supreme Court Writ No. 2014-1823, Motion for Leave to Supplement (submitted April 29, 2015); Rec. Doc. 6-1, Exhibit V.

bargain offer which carried a four-year sentence and . . . the D.A.'s office would bill him as a multiple offender if he went to trial and was convicted."[36]    There is no suggestion in that response that counsel advised Adams that the maximum sentence he could receive as a multiple offender was six years imprisonment.    The Louisiana Supreme Court denied relief without stated reasons.

Adams claims that he should be entitled to relief because he has now produced documented proof that shows the plea offer was made and rejected; therefore the state court's decision was based on an unreasonable determination of the facts.    He also requests an evidentiary hearing to secure defense counsel's testimony regarding "the terms of the plea offer."[37]    The State cites *Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), for the proposition that the evidence Adams relies upon in this Court was not properly submitted to the state courts for review and a federal *habeas* court's review is limited to the record that was before the state court that adjudicated the claim on the merits. Thus, the State submits that the findings of the state courts did not amount to an unreasonable determination of the facts in light of the evidence presented to the state courts.[38]

The State's position under *Pinholster* is compelling.    In *Pinholster*, the Supreme

---

[36]    *Id.*

[37]    Rec. Doc. 13, p. 11.

[38]    Rec. Doc. 14.

Court reversed the circuit's court's ruling that was based upon consideration of new evidence adduced at a federal evidentiary hearing, holding that federal courts on *habeas* review are limited to the record that was before the state courts:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language required an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time *i.e.*, the record before the state court.

*Pinholster*, 563 U.S. at 181-82; *see also Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011) (same rule applies to factual determinations under section 2254(d)(2)).

*Pinholster* restricts this Court's analysis of the state courts' determination to the state-court record in existence at the time the determination was made.    That is, the Court's review is confined to the same evidence the state courts considered.    Here, evidence of the plea offer was not introduced for consideration in the state district court or the intermediate appellate court, having only been submitted by way of supplement to the Louisiana Supreme Court in connection with a writ of supervisory review.    It is unclear whether the Supreme Court considered the evidence but it could not possibly have been considered by either the district court or the intermediate appellate court. [39]    Based upon the reasoning and

---

[39] The Louisiana Supreme Court allowed Adams to file a supplemental memorandum with the new evidence, which was made a part of the state-court record.    Although it is theoretically possible the Louisiana Supreme Court considered the evidence in making its determination, this cannot be determined with any certainty because that Court denied relief

rationale of *Pinholster*, consideration of the evidence for the first time by the federal district court on *habeas* review is improper and impedes "AEDPA's goal of promoting comity, finality, and federalism by giving state courts the first opportunity to review [a] claim, and to correct any constitutional violation in the first instance."    *Higgins v. Cain*, 720 F.3d 255, 263 (5th Cir. 2013) (citing *Pinholster*, 131 S.Ct. at 1401).    Because Adams's claims have already been adjudicated on the merits, § 2254 limits this Court's review to the record that was before the state courts.

Based upon only the evidence presented in the state-court proceedings, Adams has not established either that the state courts made an unreasonable determination of the facts under § 2254(d)(2) or that the adjudication by the state courts resulted in a decision that was contrary to, or an unreasonable application of, *Strickland*, under § 2254(d)(1).    The state district court determined on the record presented that Adams had not shown that a four-year plea offer was tendered.    The record contained nothing to support his claim. No formal written offer or court minute entry appears in the record to even suggest such a plea offer was made.    Adams concedes as much in his federal petition.    He supported his claims with mere self-serving allegations that failed to show even the existence of a plea offer, much less that his attorney offered incorrect advice to reject the plea offer.    The state

---

without reasons.    What is certain is that the new evidence was not considered by the last Court to issue a reasoned opinion.    Notwithstanding all this, even if it were assumed that Adams presented this evidence to the state courts so as not to preclude it from federal review, the claim still does not warrant relief for the additional reasons stated below.

court was not required to hold an evidentiary hearing to search for additional details.[40] Based upon the complete failure of proof, the district court rejected the claim as unsupported and meritless.    The finding was upheld by the appellate court on the record before it and upon review by the state's highest court.    It bears repeating that the *Strickland* standard for judging the performance of counsel "is a most deferential one."    *Harrington*, 562 U.S. at 105.    When combined with the extra layer of deference that § 2254(d) provides, the result is double deference, and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."    *Id.*    Adams offered no evidence whatsoever to overcome the presumption that counsel's performance was constitutionally adequate.    On federal *habeas* review, this Court simply cannot conclude under the circumstances that Adams overcame this doubly deferential standard and satisfied his burden of proving entitlement to *habeas* relief on this ineffective assistance claim.

Furthermore, even if *Pinholster* were not applicable and this Court were to consider the response by counsel referring to a four-year plea offer extended to Adams, the same conclusion is warranted.    The mere fact that a plea offer was made and that Adams rejected it does not suffice to show that counsel performed deficiently.    In fact, counsel's response shows that he advised Adams to accept the plea offer and that he would face charges as a

---

[40]    La. Code Crim. P. art. 929(A).    The state court's decision in this regard is not subject to review in federal *habeas corpus* proceedings.    *Pitts v. Tanner*, Civ. Action No. 6:14-CV-3145, 2015 WL 10045174, at *23 (W.D. La. Dec. 14, 2015), *adopted*, 2016 WL 554884 (2016).

multiple offender if he went to trial, but Adams rejected the offer.    Adams does not dispute that counsel advised him to accept the plea offer and he declined.    He argues only that he rejected it based on counsel's incorrect advice that he could only receive six years imprisonment as a multiple offender, which is the linchpin of his argument.    There is <u>no</u> evidence – even new evidence – that this particular advice was given – there is only Adams' statement to that effect in his petition, which is not evidence.    The <u>pertinent</u> advice counsel gave his client in this case was to *accept* the plea agreement, and his advice in this regard certainly was not objectively unreasonable.    This case is distinguished from *Lafler*, 132 S.Ct. 1376 (2012), where the Supreme Court held that trial counsel was ineffective for failing to advise petitioner to accept the plea offer, and all counsel agreed the offer was rejected because trial counsel performed deficiently in providing inaccurate information.    Adams has not shown that he is entitled to relief on this claim.

In sum, because Adams has not shown that the state court's denial of his ineffective assistance of counsel claims was contrary to or an unreasonable application of federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, he is not entitled to *habeas corpus* relief.

**RECOMMENDATION**

**IT IS RECOMMENDED** that Adams's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.    To the extent that petitioner is challenging his state

36

criminal judgment in Case No. 10-1606, it is **RECOMMENDED** that those challenges be **DISMISSED WITH PREJUDICE** as untimely.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United*

*Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[41]

New Orleans, Louisiana, this ___1st___ day of ___February___, 2017.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[41] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.